**John Edward FLETCHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 35052.**

Court of Criminal Appeals of Texas.

Dec. 5, 1962.

John Edward Fletcher, appellant, pro se.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and J. R. Musslewhite, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is abortion; the punishment, 3 years.

The female named in the indictment testified that she was 26 years old and had four children; that she had been separated from her husband for more than a year. She contacted appellant on Thursday, around the 21st of October, 1961, for the purpose of obtaining an abortion.

Dr. James T. Ainsworth testified that he examined the prosecutrix on September 21, 1961, to determine whether she was pregnant, and found what in his opinion was a normal pregnancy of some eight weeks.

The prosecutrix testified that after she had been examined by Dr. Ainsworth; had tried during the first week after hearing that she was pregnant to abort the child herself by taking quinine and by sitting on a pan of water with turpentine; and after Dr. Van Zandt had fixed a fee of $600 for an abortion, she obtained a telephone number and the name Jack; that she called and made an appointment at her home; that appellant came and examined her at her home; that he made a pelvic examination and told her that she was pregnant, probably three or four months along.

On Saturday appellant picked her up when she got off from work and took her to an office in a "shabby little building on this lumber yard". Upon entering the office she sat down and waited for him to prepare the tubing he got at a drug store on the way. She then removed the blue jeans she was wearing, laid down on a couch and appellant inserted the tubing or catheter into her female parts and taped it to hold it in place. After about an hour appellant took her to the home of a friend where she spent the night. He told her that if she had not already had a miscarriage he would take her the next morning "and go through other procedures to bring it on."

The next day appellant picked her up at her friend's house and took her to a cottage on the river where appellant went through the same procedure, using a larger tubing, and also pumped a liquid from a pan into her; then repeated the procedure after he had her take a walk.

She remained in the cottage during the night. Appellant was with her except for a short time. During the night she was having chills. She could not remember when her labor pains began, but appellant was present the next day when the fetus was passed and told her it was a girl.

Appellant attempted to stop the excessive flow of blood and told her to keep using Tampax for that purpose, and took her home. She continued to have chills and fever until she went to the North Houston Hospital four days later.

She remained in this hospital nine days after which she was taken to Jefferson Davis Hospital, where she stayed for four and a half weeks.

In addition to the foregoing, the prosecutrix testified that the abortion was performed on her by the appellant and the tube or catheter was inserted into her with her consent, and that appellant charged her $250.00 for his services.

She further testified, on cross-examination:

"Q. This fetus or embryo in your womb, do you know whether it was alive or not?

"A. I hadn't felt life so I couldn't tell. I had carried it all of that time so it must have been alive.

"Q. What makes you think it must have been alive?

"A. Well if it wasn't, wouldn't I have had a miss earlier?"

"Q. You really don't know these things you did, you had done yourself prior to this time, had killed the embryo or not, do you?

"A. I can't tell because it would have been sooner—it would have been months sooner."

"Q. So you don't know really whether the child was alive or not?

"A. No, except I was gaining weight and was carrying it."

Dr. Iglesia, who examined and attended the prosecutrix at the North Houston Hospital, testified that she was toxic and bleeding rather profusely; there was a bad odor; the blood was dark; the uterus or womb was open; the uterus was enlarged and soft; that he removed pieces of the placenta, and that her fever and infection in the womb was caused by the placenta tissue and that "it was an incomplete abortion".

Dr. J. S. Conner, who examined the prosecutrix at Jefferson Davis Hospital, testified that she had a large pelvic abscess which caused infection which was localized "in both tubes and ovaries and also the uterus and also in the pelvis up to the level of the navel."

Dr. Conner further testified that her condition was critical and that an operation was performed and the organs involved in the large abscess were removed, with-

out which operation at the time, he felt almost certain, she would have died.

The appellant's defense was that his association and contact with the prosecutrix were purely social; that he had dated her and had sexual relations with her. Appellant testified that it was about 9 o'clock Sunday night that the prosecutrix first informed him that she wanted to have an abortion and told him of her efforts in that regard. He denied that he did anything to her to bring about an abortion; denied that he inserted a catheter in her private parts. "The way she is telling it is no truth in it."

No useful purpose would be served by setting out fully other evidence, such as the testimony of Arnie Williams that he saw the prosecutrix in appellant's office, and the testimony relating to the hard feelings between Williams and appellant; Dr. Van Zandt's testimony that he did not remember seeing the prosecutrix before, and did not tell her he would perform an abortion on her for five or six hundred dollars; appellant's claim of police brutality and false accusations in regard to instruments suitable for abortions on a prior occasion; and appellant's admission that he had served a term in the penitentiary for theft by bailee.

The jury resolved the issues of fact as to the performance of the abortion against appellant and the evidence is sufficient to sustain their verdict.

The record contains no formal bills of exception or exceptions relating to the charge of the court, and the only informal bill of exception is obviously without merit.

Appellant was represented by counsel at the trial, but his motion for new trial and his brief on appeal, signed by appellant, were obviously not prepared by a lawyer or by one versed in the law. In fact, in his brief appellant complains of his attorney and his preparation of his case for trial, and of other matters not before this Court for review.

We have written at length in setting out the facts to demonstrate the efforts of appellant's counsel to show the absence of required proof that the fetus was alive at the time the tube was inserted by appellant, if it was. Parnell v. State, 166 Tex. Cr.R. 239, 312 S.W.2d 506, is authority for our holding that the evidence is sufficient in this regard.

The judgment is affirmed.